UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENNIS WILLIAMS, JR.,<br> Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:21cv966 (VLB) |
| | : |
| C/O PAXTON, ET AL.,<br> Defendants. | :<br>: |

## INITIAL REVIEW ORDER

  The plaintiff, Dennis Williams, Jr. ("Williams"), is currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut. He has filed a complaint under 42 U.S.C. § 1983 against Correctional Officers Paxton, Alzate, Bilodeau, Thomas, Malave, Allen, Man, Depalma, Hermanowski, Judkins, and Fountain and Lieutenants Scaglirini and Charter. The allegations arise from an incident involving an altercation between Williams and another inmate at Walker Correctional Institution ("Walker") in August 2018. For the reasons set forth below, the Court will dismiss the complaint with leave to amend.

**I. Standard of Review**

  Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

II. <u>Facts</u>

During the evening of either August 28, or August 29, 2018 at Walker,

2

**Williams was involved in a physical altercation with another inmate.** *See* Compl. at 6 ¶¶ 1-2, ECF No. 1. **A correctional officer called a code to summon other officers to the scene of the altercation.** *Id.* ¶ 3. **An officer instructed Williams to stop all combative behavior.** *Id.* ¶ 4. **Williams immediately stopped fighting and raised his hands in the air.** *Id.* **An officer then tackled Williams from behind and slammed him to the floor.** *Id.* ¶¶ 4-5. **Williams' hand struck a table as he fell, and his head hit the ground.** *Id.* ¶¶ 6-7. **As a result of the use of force and the fall, Williams suffered bruises to his back, headaches, and a broken hand.** *Id.* ¶ 8.

**An officer cuffed him and escorted him to a cell in the restrictive housing unit.** *Id.* ¶ 9. **During the escort, the officer twisted William's wrist which caused Williams to experience pain.** *Id.* ¶¶ 9-10. **When Williams complained that the officer was hurting his wrist and that his hand might be broken, the officer twisted his wrist further.** *Id.* ¶¶ 10-12. **Williams also informed the officer that he needed medical attention.** *Id.* ¶ 13.

**After arriving in the restrictive housing unit, Williams asked every officer who came by his cell to call the medical department.** *Id.* ¶ 15. **During medication call, Williams showed a nurse his swollen and black and blue hand, informed her that he could not move it and that it was painful, and asked for pain medication and ice.** *Id.* ¶¶ 15-17. **An officer informed the nurse that Williams could not have ice during his confinement in the restrictive housing unit.** *Id.* ¶ 18. **The nurse did not provide Williams with ice or medication to alleviate his painful injuries.** *Id.* **She indicated that a medical provider would examine him the following day and**

3

would send him for x-rays.  *Id.*

During the night, Williams cried out in pain and could not sleep.  *Id.*  ¶ 19.  He repeatedly asked to see a medical staff member, but no one came in response to his requests.  *Id.*  The next morning at breakfast, Williams asked an officer to call a medical provider.  *Id.*  ¶ 20.  After breakfast, Williams asked every officer as well as a lieutenant and a captain, who toured the restrictive housing unit, to call the medical department.  *Id.*  ¶ 21.  The officers and supervisory officials indicated either that they would contact the medical department or that they had already called the medical department on his behalf.  *Id.*  at 7 ¶ 22.  Williams also showed his swollen and discolored hand to each nurse who came to the unit to pass out medication.  *Id.*  ¶ 23.  None of the nurses provided him with treatment for his injury or symptoms.  *Id.*

At 9:00 p.m. that evening, a correctional officer suggested that he submit a written request for treatment to the medical department.  *Id.*  ¶ 25.  During medication call, Williams showed a nurse his swollen hand and the nurse indicated that she would return to the unit with pain medication for Williams.  *Id.* ¶ 27.  At 12:30 or 1:00 a.m. the following morning, a nurse brought medication to Williams's cell.  *Id.*  ¶ 28.  Before taking the pain medication, Williams lost consciousness and fell hitting his head on the desk in the cell.  *Id.*  After he regained consciousness, a nurse took Williams' vital signs.  *Id.*  ¶ 30.  Williams had a fever, and his blood pressure was low.  *Id.*  Prison and/or medical officials transported Williams to a hospital for treatment.  *Id.*  ¶ 31.

### III. Discussion

Williams contends that the medical department was deliberately indifferent to his serious injuries in violation of the Eighth Amendment. *Id.* ¶¶ 32-33. He seeks monetary damages and "physical and mental therapy." *Id.* at 8.

### A. Eighth Amendment Claim – Deliberate Indifference to Medical

In *Estelle v Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs." *Id.* at 104. Deliberate indifference may not only be "manifested by prison doctors in their response to the prisoner's needs" but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

To state an Eighth Amendment deliberate indifference claim, an inmate must meet two elements. The first element requires the inmate to allege facts that demonstrate that his medical need or condition is objectively serious. *See Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted). In determining whether a condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

5

To meet the second element of an Eighth Amendment deliberate indifference claim involving a medical condition, an inmate must allege that the official acted with the requisite *mens rea,* that is, that the prison official or medical provider was actually aware that his actions or inactions would create a substantial risk of serious harm to the inmate. *See Hill*, 657 F.3d at 122 (citation omitted). Mere negligent conduct, however, does not constitute deliberate indifference. *Id.* at 123 ("'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106).

Williams alleges that he broke his hand when an officer tackled him and slammed him to the ground. His hand became swollen and painful and interfered with his ability to sleep. He also suffered from headaches due to striking his head on the ground when he fell. These allegations state a plausible claim that Williams suffered from a serious medical condition. *See, e.g.*, *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (reversing district court's determination on a motion for summary judgment that pain that fell somewhere between "annoying" and "extreme" was not objectively serious and noting that the court does not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one").

Although Williams alleges that he made various nurses aware of the swelling and pain in his hand and they failed to provide him with treatment or

refer him for x-rays, he does not name any of the nurses as defendants. He also suggests that he informed the correctional officer who escorted him to the restrictive housing unit that he needed medical treatment because his hand was painful and might be broken and that after he arrived in the restrictive housing unit, a different officer refused to permit him to use ice to reduce the pain and swelling in his hand. Williams does not mention the defendants by name other than in the caption of the complaint and the description of parties. Thus, it is not clear whether any of the eleven correctional officers who are named as defendants were aware of or deliberately indifferent to Williams's need for medical treatment for the injuries that he suffered during the use of force and his fall.

As alleged, the facts do not state a claim that any defendant was deliberately indifferent to Williams's medical needs. The Eighth Amendment deliberate indifference to medical needs claim is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1). The Court will permit Williams to file an amended complaint to identify the nurses and/or the correctional officers who may have been deliberately indifferent to the injuries that he suffered during the use of force on August 28, or 29, 2018.

    B.    <u>**Eighth Amendment Claim – Excessive Force**</u>

Williams alleges that after he had stopped fighting and had raised his hands in the air, a correctional officer tackled him from behind and slammed him to the ground causing him to break his hand and hit his head and that a

correctional officer twisted his wrist after he had been handcuffed and continued to twist his wrist during his escort to the restrictive housing unit despite his complaints of pain. These allegations may be construed to state claims of excessive force under the Eighth Amendment.

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances). Thus, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present. *Hudson*,

8

503 U.S. at 9.

The subjective component requires the inmate to allege that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  The Court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

Although the force used by officers in gaining control of Williams after he stopped fighting with another inmate and in escorting him to the restrictive housing unit could be considered excessive and unnecessary, Williams does not attribute these uses of force to any of the eleven correctional officers who are named as defendants.  As such, he has not stated a claim of excessive force under the Eighth Amendment against the named defendants.  To the extent that Williams intended to assert a claim of excessive force, the claim is dismissed without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).  The Court will permit Williams to file an amended complaint to identify the officers who allegedly used excessive force against him after his altercation with another inmate in August 2018.

C.   <u>Official Capacity Requests for Relief</u>

Williams does not indicate in which capacity or capacities he is suing the

defendants. He seeks both monetary damages and injunctive relief. To the extent that he seeks monetary relief from the defendants in their official capacities, those requests are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the request seeking monetary damages for violations of William's Eighth Amendment rights is dismissed under 28 U.S.C. § 1915A(b)(2).

Williams requests injunctive relief in the form of an order that the defendants provide him with "physical and mental therapy." ECF No. 1 at 8. An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted). If a party seeks a permanent injunction, he or she "must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d

174, 182 (2d Cir. 2012).  Thus, the standard for a permanent injunction is similar to the standard for a preliminary injunction, but a plaintiff must show actual success rather than a likelihood of success.  See *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Williams does not allege that a medical provider entered an order that he undergo therapy in connection with the injuries that he suffered in August 2018 or that any defendant denied him therapy in connection with his injuries.  Nor does he allege that the named defendants, who are correctional officers and lieutenants employed at Walker, could provide him with therapy, mental or physical.

The nature of the injunctive relief sought must relate to the claims raised in the complaint.  See *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health*, No. 3:17-CV-00325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint); *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2009 WL 179815, at *2 (D. Conn. Jan. 23, 2009) ("Because the plaintiff's allegations and request for relief ... are unrelated to the claims in the Complaint, ... the request for injunctive relief as to claims subsequent to the Complaint is inappropriate") (citing *De Beers*, 325

U.S. at 220). Here, the request for injunctive relief seeking physical and emotional therapy does not appear to be related to the allegations asserted in the complaint that pertain to the use of excessive force by officers during an incident that occurred in August 2018 or the deliberate indifference to his need for medical treatment immediately after the incident.

Furthermore, Williams is no longer confined at Walker. The Second Circuit has held that an inmate's requests for prospective injunctive relief from correctional or medical staff in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, has been released from prison or has received the relief requested. *See Booker v. Graham*, 974 F.3d 101, 107–08 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) (summary order) ("When Khalil was released from prison, he no longer had a "continuing personal stake" in the outcome of this action, and his claims [for declaratory and injunctive relief for alleged violations of his constitutional rights] were rendered moot."); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Williams is currently confined at Cheshire. Accordingly, the request for injunctive relief pertaining to the provision of mental health and

**physical therapy by the defendants, who are correctional officers at Walker, is dismissed.  See 28 U.S.C. § 1915A(b)(1).**

**ORDERS**

**The Court enters the following orders:**

**(1)     The request for injunctive relief and the Eighth Amendment claims of deliberate indifference to medical needs and excessive force are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  The official capacity claim seeking money damages for violations of Williams' Eighth Amendment rights is DISMISSED with prejudice pursuant to 28 U.S.C. § 1915A(b)(2).**

**(2)     Within thirty (30) days of the date of this order, Williams may file an amended complaint to identify the officers who may have been involved in the alleged uses of excessive force and the officers and nurses who may have been deliberately indifferent to his medical needs in connection with the altercation that occurred at Walker at the end of August 2018 and his confinement in the restrictive housing unit after the altercation.  If Williams chooses not to file an amended complaint within the stated or any extended deadline, the Clerk is the Clerk is directed to enter judgment and close the case.**

**SO ORDERED at Hartford, Connecticut.**

**_____/s/_____
Vanessa L. Bryant
United States District Judge**

13