### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DENNIS WILLIAMS, JR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 3:21-cv-966 (VLB)** |
| | : | |
| **C/O PAXTON, et al.,** | : | |
| **Defendants.** | : | |

### INITIAL REVIEW ORDER FOR AMENDED COMPLAINT

The plaintiff, Dennis Williams Jr., is currently incarcerated at a prison in Delaware.  However, this action pertains to events which allegedly occurred while Williams was incarcerated in Connecticut under the authority of the Connecticut Department of Correction ("DOC").  Williams has filed an amended complaint bringing claims, pursuant to 42 U.S.C. § 1983, against Correctional Officers DePalma, Mann, Paxton, and Bilodeau, Captains Danek and Dorozko, Lieutenants Scagliarini and Charter, Deputy Warden Roach, and 18 John and Jane Doe defendants.  For the following reasons, the Court will permit Williams to proceed with claims against some of the defendants named in the amended complaint.

### I.    BACKGROUND

On July 16, 2021, Williams filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, against eleven named defendants.  Compl., Dkt. No. 1 at 1.  On December 13, 2021, the Court filed an Initial Review Order suggesting that Williams had plausibly pled violations of his Eighth Amendment rights.  Initial Review Order, Dkt. No. 8 at 5–9.  But, since Williams did not identify any defendants by name in the narrative portion of the complaint, the Court concluded that Williams had not pled

plausible claims specifically against any of the eleven named defendants. *Id.* at 7, 9. Thus, the Court dismissed the initial complaint, but granted Williams leave to file an amended complaint that "identif[ied] the officers who may have been involved in the alleged uses of excessive force and the officers and nurses who may have been deliberately indifferent to his medical needs . . . ." *Id. at* 13. On February 24, 2022, Williams filed an amended complaint. Am. Compl., Dkt. No. 13.

## II.    THE AMENDED COMPLAINT

The amended complaint names 27 defendants, 18 of whom being "John or Jane Does." *Id.* at 1. It brings both § 1983 and state tort claims. Id. at 12–13, ¶¶ 38–43. The following facts are alleged in the amended complaint.

In the late evening of August 29, 2018, Williams was involved in an altercation with a fellow inmate. *Id.* at 6, ¶ 1. A "code" was called, and correctional officers responded to the scene. *Id.*, ¶ 2. Upon arrival, Officer Doe 1[1] instructed Williams to cease all combative behavior. *Id.*, ¶ 3. Williams immediately complied with this order and placed his hands in the air. *Id.*, ¶ 4.

Despite his compliance with Officer Doe 1's order, Officer DePalma tackled Williams from behind. *Id.*, ¶ 5. As Williams fell to the ground, his hand struck a table and his head struck the floor. *Id.*, ¶¶ 6–7. As a result, Williams suffered a

---

[1] The complaint differentiates the many John and Jane Doe defendants by means of job title prefixes and numerical suffixes. Dkt. No. 13 at 1. While the complaint refers to the Doe defendants having a job title of "correctional officer" simply as a "John Doe," to mitigate confusion, the Court will refer to them as an "Officer Doe."

2

broken hand, bruising to his back, and headaches.  *Id., ¶ 8.*  These injuries were so severe that Williams purports to have "fainted numerous times."  *Id.*  While Williams attributes his injuries to the "excessive force" of Officers DePalma, Mann, Paxton, and Bilodeau, *id.*, he *does not* allege that all four of these defendants tackled him. The only defendant whom Williams alleges to have tackled him is Officer DePalma. *Id., ¶ 5.*

Officers DePalma and Mann handcuffed Williams and escorted him to a Restricted Housing Unit (RHU).  *Id., ¶ 9.*  In doing so, Officers Mann and DePalma twisted the wrist of Williams's broken hand.  *Id.*  Williams informed the Officers that he thought his hand was broken, and that his injury was being aggravated by tight cuffing and wrist twisting.  *Id. at 7, ¶¶ 10–11.*  But this just caused Officer Mann to twist Williams's wrist more aggressively.  *Id., ¶ 12.*  On the way to the RHU, Williams mentioned that he needed medical attention.  *Id., ¶ 13.*

While or before being admitted to the RHU, Williams was seen by Nurse Doe 1.  *Id., ¶ 14.*  Nurse Doe 1 filed a report indicating that Williams's hands were free of abrasion, cuts, and swelling, but that Williams was experiencing hand pain.  *Id.* Nurse Doe 1 ordered ice and Motrin for treatment.  *Id.*  Williams asserts that he cannot take Motrin due to having severe Crohn's disease.  *Id.*  But the complaint does not indicate that Nurse Doe 1 was aware of this fact.  Williams appears to fault Nurse Doe 1 for not ensuring that he was seen by "medical" prior to his admission to the RHU.  *Id.*

3

Soon after arriving in RHU, Williams asked Officers Doe 2 and Doe 3 to call the medical unit to alert them to his condition. *Id.*, ¶ 15. But the Officers declined to make such a call. *Id.* Williams also exhibited his hand—which was now discolored and swollen—to Nurse Doe 2. *Id.*, ¶ 16. Williams asked Nurse Doe 2 for ice, pain medication, and transport to a hospital. *Id.*, ¶ 17. These requests were denied. *Id.*[2] Nurse Doe 2 informed Williams that someone would see him tomorrow and perform an x-ray for his injury. *Id.* at 8, ¶ 15.

All through the night, Williams was unable to sleep and cried out in pain. *Id.*, ¶ 19. That night, Williams asked Officer Does 2 through 6 to see medical staff. *Id.* But these requests were denied. *Id.*

The next morning, Williams asked Officer Does 4 through 9, Lieutenant Does 1 and 2, and Captain Doe 1 to see medical staff. *Id.*, ¶¶ 20–21. But these Officers uniformly told Williams that medical staff had already been informed about his situation. *Id.*, ¶ 22. And none of the Officers took Williams to the medical unit for treatment. *Id.*

---

[2] Officer Does 2 and 3 appear to have informed Nurse Doe 2 that inmates placed in RHU could not have ice. Dkt. No. 13 at 8, ¶ 18.

From this point on, Williams asked every Nurse Doe who passed his cell to be seen by medical staff.  *Id.*, ¶ 23.[3]  By this time, Williams' hand was discolored and "swollen like a baseball glove."  *Id.*  But Williams still received no help.  *Id.*

At 9:00 p.m. on August 30, 2018, Officer Doe 8 relayed a message from medical staff that Williams needed to write a request for treatment.  *Id.*, ¶ 25.  The complaint does not indicate whether Williams complied with this instruction.  But Williams does assert that he had already written a request for treatment the previous day.  *Id.*

During a subsequent "med call," Williams showed his hand to Nurse Doe 4.  *Id.* at 9, ¶ 27.  In response, Nurse Doe 4 told Williams that she would obtain pain medication for him.  *Id.*

At around 1:00 a.m. on August 31, 2018, Nurse Doe 5 brought Williams the pain medication promised by Nurse Doe 4.  *Id.*, ¶ 28.  But, before Williams could take the medication, his pain caused him to pass out.  *Id.*  Williams fell to the ground, hitting his head against a desk in the process.  *Id.*  After falling unconscious, Williams was rushed to a hospital.  *Id.*, ¶ 31.  Williams currently suffers loss of feeling in his hand, chronic back pain, migraine headaches, and

---

[3] Williams alleges that he "talked to every Nurse Jane/John Doe's 3 who came around for med call . . . ."  Dkt. No. 13 at 8, ¶ 23.  The Court is not certain what Williams means when referring to "Nurse Jane/John Doe's 3," but interprets the pleading to allege that Williams spoke to every nurse named as a defendant who passed by his cell.

PTSD as a result of the incidents described in the amended complaint.  *Id.* at 13, ¶ 37.

### III.    Standard of Review

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brough by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted). Additionally, complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## IV.    DISCUSSION

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). In his amended complaint, Williams brings section 1983 claims asserting violations of his Eighth Amendment rights, and additional state law tort claims.

A.   Section 1983 Claims against Captains Danek and Dorozko,
Lieutenants Scagliarini and Charter, and Deputy Warden Roach.

Plaintiff brings Eighth Amendment excessive force and deliberate indifference claims against Captains Danek and Dorozko, Lieutenants Scagliarini and Charter, and Deputy Warden Roach.  Dkt. No. 13 at 12, ¶ 40.  However, these defendants are not mentioned in the complaint's account of events occurring in late August of 2018.  *Id.* at 6–9, ¶¶ 1-34.  When explaining the nature of his claims against these defendants, Williams clarifies that he seeks to hold them liable for "failing to take disciplinary action to curb the known pattern of physical abuse of inmates by defendants DePalma, Mann, Paxton, [and] Bilodeau."  *Id.* at 12, ¶ 40.  And, in an argumentative section of the complaint, Williams indicates that the defendants named in this action were personally involved in violations of his constitutional rights, in part, by virtue of implementing policies and customs permitting unconstitutional practices, and by failing to appropriately supervise, train, and discipline subordinate staff.  *Id.* at 10, ¶ 36.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (1994) (internal quotation marks omitted).  When assessing a defendant's alleged "personal involvement," the Second Circuit forbids the application of any "special test for supervisory liability."  *Tangretit v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).  Thus, "a plaintiff must plead that each

8

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Applying Second Circuit precedent, Williams cannot proceed with section 1983 claims against Danek, Dorozko, Scagliarini, Charter, or Roach on the theory that these defendants are liable for the unconstitutional acts of their subordinates (DePalma, Mann, Paxton, and Bilodeau).  This is not to say that these supervisory defendants could not incur section 1983 liability through their own acts and omissions.  *See Dixon v. Lupis*, 3:20-cv-1754 (VLB) 2022 WL 4598857 at 2–3 (D. Conn. Sept. 30, 2022) (inmate pleads a plausible § 1983 deliberate indifference claim against a prison warden).  But, to the extent such claims were viable, they have not been supported by factual pleading.

Williams alleges no facts supporting an inference that any inmate beside himself was ever assaulted by DePalma, Mann, Paxton, or Bilodeau.  And, if one were to assume that DePalma, Mann, Paxton, and Bilodeau did routinely assault inmates, Williams alleges no facts supporting an inference that Danek, Dorozko, Scagliarini, Charter, or Roach was aware of this misconduct.  Because Williams does not allege any facts supporting an inference that Danek, Dorozko, Scagliarini, Charter, or Roach turned a blind eye to a known pattern of physical abuse of inmates, his pleading is conclusory.  Accordingly, Williams' section1983 claims against Danek, Dorozko, Scagliarini, Charter, and Roach are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### B.   Excessive Force Claims Against Officers DePalma, Mann, Paxton, and Bilodeau

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  When an inmate alleges excessive use of force by a correctional officer, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).  The use of excessive force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  *Id.* at 4.  Thus, the "core of judicial inquiry" of an excessive force claim is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Here, Williams alleges that Officer DePalma tackled him when responding to a "code" called for an "altercation" that Williams was having with another inmate.  When tackled, Williams asserts that he was holding up his hands and not actively engaged in combat.  This implies that Officer DePalma should not have perceived Williams to be a safety or security threat when he applied force.  While one could certainly imagine circumstances in which a correctional officer responding to an emergency would be justified in tackling an inmate (even one with his hands in the air), the Court concludes that Williams has sufficiently alleged facts supporting an inference that Officer DePalma's tackle constituted excessive force simply for the purpose of overcoming the standard under section 1915A.

After Williams was tackled, Officer DePalma and Mann handcuffed him and then escorted him to the RHU.  During his escort, Williams informed the Officers that his hand might be broken, and that this injury was being aggravated by tight cuffing and pressure being applied to his wrist.  Officer Mann responded to these comments by more aggressively twisting Williams's wrist.  Based on this account of events, Officer Mann appears to have applied unnecessary pressure to Williams's broken hand for the sole purpose of causing Williams pain.  If proven, this conduct could also be deemed to constitute excessive force.  Thus, Williams has pled plausible excessive force claims against Officers DePalma and Mann.

Williams has not pled plausible excessive force claims against Officers Paxton or Bilodeau.  In the complaint, Williams attributes injuries to the "excessive force" of Officers DePalma, Mann, Paxton, and Bilodeau.  But Williams never explains how Officers Paxton or Bilodeau applied force upon him.  The complaint conveys that a single officer—Officer DePalma—tackled him and that just two officers—Officers DePalma and Mann—roughly escorted him to RHU in handcuffs.  Since Officers Paxton and Bilodeau had no alleged involvement in those two incidents, and Williams alleges no other incidents of excessive force, the excessive force claims against Officers Paxton and Bilodeau must be dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

In sum, the Court will permit Williams to proceed with excessive force claims against Officers DePalma and Mann, but not against Officers Paxton and Bilodeau.

### C.    Section 1983 Claims Against Officer Doe 1.

Williams alleges that Officer Doe 1 responded to a "code" called for an "altercation" that Williams was having with another inmate.  Upon arrival, Officer Doe 1 ordered Williams to cease all combative behavior.  The complaint includes no other allegations pertaining to Officer Doe 1's conduct.

Officer Doe 1 is named as a defendant in the captioning of the amended complaint.  Dkt. No. 13 at 1.  But, unlike every other named defendant, Williams does not purport to bring any specific section 1983 claims against him.  Id. at 12–13, ¶¶ 38–43.  This suggests that Williams may have inadvertently named Officer Doe 1 as a defendant in this action.

To the extent that Williams alleges a section 1983 claim against Officer Doe 1, it lacks merit.  The Constitution does not forbid correctional officers from ordering inmates to stop fighting.  Any section 1983 claims brought against Officer Doe 1 are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### C.    Deliberate Indifference Claims Against Officer Does 2 through 10, Nurse Does 1 through 5, Lieutenant Does 1 and 2, and Captain Doe

The Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs."  *Estelle v Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference may not only be "manifested by prison doctors in their response to the prisoner's needs" but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.* at 104–05.

12

To state an Eighth Amendment deliberate indifference claim, an inmate must meet two elements.  The first element requires the inmate to allege facts that demonstrate that his medical need or condition is objectively serious.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain . . . .") (internal quotation marks and citation omitted).  To determine whether a condition is serious, a court should consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

To meet the second element of an Eighth Amendment deliberate indifference claim, a plaintiff must allege that a defendant-official acted with "a sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d. Cir. 1994).  This culpable mental state exceeds mere negligence and is akin to criminally reckless intent.  *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

Here, Williams alleges that he consulted with Nurse Doe 1 during, or prior to, his admission to the RHU.  Nurse Doe 1 filed a report indicating that Williams complained of hand pain, but that his hand was free of abrasions, cuts, or swelling.  Notably, Williams does not allege that his hand was swollen when he consulted with Nurse Doe 1.  Nurse Doe 1 also ordered ice and Motrin treatment.  While Williams complains that he cannot take Motrin due to a Crohn's disease diagnosis, he does not

allege that Nurse Doe 1 was aware of this fact.  After filing her report and ordering treatment, Nurse Doe 1 had no more alleged involvement in this case.

The Court concludes that Williams has not pled a plausible deliberate indifference claim against Nurse Doe 1.  After listening to Williams' complaints of hand pain, Nurse Doe 1 ordered pain treatment.  While Williams may have preferred to have been taken to the medical unit, he does not allege that his hand showed signs of serious injury when he consulted with Nurse Doe 1.  And mere disagreement about the appropriate treatment for hand pain is insufficient to state a deliberate indifference claim.  *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.")  Accordingly, Williams deliberate indifference claim against Nurse Doe 1 is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

With respect to Officer Does 2 through 10, Nurse Does 2 through 5, Lieutenant Does 1 and 2, and Captain Doe, the Court concludes that Williams has pled plausible deliberate indifference claims.  While placed in RHU, Williams alleges that his hand became badly swollen and discolored.  For over 24 hours, Williams repeatedly exhibited his obviously injured hand to the defendants and complained of excruciating pain.  However, the defendants did not arrange for Williams to receive immediate medical treatment until Williams fainted from pain.  These

allegations support an inference that the defendants knowingly disregarded Williams' obvious need for medical treatment. [4]

In sum, the Court will permit Williams to proceed with his deliberate indifference claims against Officer Does 2 through 10, Nurse Does 2 through 5, Lieutenant Does 1 and 2, and Captain Doe, but not against Nurse Doe 1.

### D.    State Law Tort Claims

"[F]ederal courts have jurisdiction to hear claims under state law whenever (1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact." *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989).  Notwithstanding the foregoing, federal courts should refrain from exercising supplemental jurisdiction over a claim that "raises a novel or complex issue of State Law . . . ." *See* 28 U.S.C. § 1367(c)(1).

---

[4] In narrative section of the complaint, Williams entirely neglects to mention Officer Doe 10.  Dkt. No. 13 at 6–9, ¶¶ 1–34.  But, when explaining the basis for his tort claims, Williams includes Officer Doe 10 in the list of unnamed officers who denied him access to medical treatment while placed in RHU.  *Id.* at 13, ¶ 43. Thus, the Court construes the pleading as alleging that Officer Doe 10 denied Williams access to medical treatment.

In the amended complaint, Williams brings assault and battery tort claims against DePalma, Mann, Paxton, Bilodeau, Danek, Dorozko, Scagliarini, Charter, and Roach.  Dkt. No. 13 at 12, ¶¶ 39–40.  And he brings additional negligence claims against Officers Doe 2 through 10, Lieutenant Does 1 and 2, and Captain Doe.  *Id.* at 13, ¶ 43.  These state tort claims arise from the same alleged facts as his surviving section 1983 Eighth Amendment claims.  Thus, the Court will consider whether Williams has plausibly pled assault and battery claims.  And, with respect to Williams' negligence claims, the Court will evaluate whether the claims raise novel or complex issues of state law.

### 1.    Assault and Battery Claims

Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . and (b) a harmful contact with the person of the other directly or indirectly results."  *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)).  And "[l]iability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) the other is thereby put in such imminent apprehension."  *Id.* Further, to "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972).

The allegedly excessive force applied by Officers DePalma and Mann could suffice to establish the state torts of assault and battery.  *See Baltas v. Dones*, 3:22-

cv-38 (MPS), 2022 WL 1239989 at *19 (D. Conn. April 27, 2022) (allegations supporting Eighth Amendment excessive force claims also supported assault and battery claims).  However, Williams does not allege to have been harmfully touched or threatened by Paxton, Bilodeau, Danek, Dorozko, Scagliarini, Charter, or Roach.  While the state of Connecticut does recognize the concept of aiding and abetting liability in the context of tort law, *see Master-Halco, Inc. v. Scillia Dowling Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010), Williams alleges no specific facts permitting an inference that Paxton, Bilodeau, Danek, Dorozko, Scagliarini, Charter, or Roach knowingly or recklessly aided DePalma or Mann in their allegedly tortious conduct.  Thus, Williams has alleged plausible assault and battery tort claims against DePalma and Mann, but not against Paxton, Bilodeau, Danek, Dorozko, Scagliarini, Charter, and Roach.

### 2.    Negligence Claims

Connecticut General Statute section 4-165 provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."   "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks omitted).

The Doe defendants, against whom Williams asserts negligence claims, are all state employees who were acting within the scope of their employment.  Thus, they are generally immune to state negligence tort claims.  However, Williams had pled plausible Eighth Amendment deliberate indifference claims that necessarily require a showing of "recklessness" as the term is used in the context of criminal law.  *Farmer*, 511 U.S. at 839–40.  And the Doe defendants are not immune from state negligence tort claims to the extent that they engaged in "reckless" conduct.  *Miller v. Egan*, 265 Conn. 301, 319 (2003).

While federal deliberate indifference claims and state negligence claims against state employees each may procced with plausible allegations of "reckless" conduct, it is not clear that conduct deemed "reckless" in the context of Eighth Amendment jurisprudence would necessarily constitute recklessness for the purpose of evaluating statutory immunity under Connecticut state law.  *See Farmer*, 511 U.S. at 836 ("[T]he term recklessness is not self-defining.")  And the Court's research has uncovered no precedential state court opinions holding that a showing of deliberate indifference necessarily suffices to overcome a Connecticut state employee's statutory immunity to negligence claims.

The Court is highly reluctant to make any rulings that could shape how statutory immunity issues are resolved under Connecticut state law.  *See Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of

18

federalism and comity may dictate that these questions be left for decision by the state courts.")   Accordingly, the Court declines to exercise supplemental jurisdiction over the negligence claims that Williams brings against the Doe defendants.

### 3.   Conclusion

The Court will permit Williams to proceed with state assault and battery tort claims against DePalma and Mann.   But the state assault and battery claims brought against Paxton, Bilodeau, Danek, Dorozko, Scagliarini, Charter, and Roach are dismissed.   *See* 28 U.S.C. § 1915A(b)(1).   And the Court declines to exercise supplemental jurisdiction over the state negligence claims brought against Officer Does 2 through 10, Lieutenant Does 1 and 2, and Captain Doe.

### E.   Injunctive Relief

In his amended complaint, Williams seeks both monetary damages and injunctive relief.   Dkt. No. 13 at 14.   With respect to injunctive relief, Williams specifically requests the defendants to provide him with physical and mental health therapy.   *Id.*

In its first Initial Review Order, the Court explained, in detail, why it could not award Williams injunctive relief in the form of mandated therapy sessions.   Dkt. No. 8 at 9-13.   Nothing alleged or argued in Williams's amended complaint sways the Court's initial judgment on this matter.   For the reasons asserted in the first Initial Review Order, the Court dismisses Williams's request for injunctive relief.   *See* 28 U.S.C. § 1915A(b)(1).

**ORDERS**

In accordance with the foregoing analysis, the Court enters the following orders:

(1)   The section 1983 Eighth Amendment claims brought against Danek, Dorozko, Scagliarini, Charter, Roach, Paxton, Bilodeau, Officer Doe 1, and Nurse Doe 1 are <u>DISMISSED</u> pursuant to 28 U.S.C. § 1915A(b)(1).

(2)   The assault and battery state tort claims brought against Danek, Dorozko, Scagliarini, Charter, Roach, Paxton, and Bilodeau are <u>DISMISSED</u> pursuant to 28 U.S.C. § 1915A(b)(1).

(3)   The Court declines to exercise supplemental jurisdiction over the state negligence claims brought against Officer Does 2 through 10, Lieutenant Does 1 and 2, and Captain Doe.  These claims are <u>DISMISSED</u> without prejudice.

(4)   All claims for injunctive relief are <u>DISMISSED</u> pursuant to 28 U.S.C. § 1915A(b)(1).

(5)   All of the claims that Williams has brought against Danek, Dorozko, Scagliarini, Charter, Roach, Paxton, Bilodeau, Officer Doe 1, and Nurse Doe 1 have been dismissed.  The Clerk shall <u>TERMINATE</u> these defendants as parties to this action.

(6)   The following claims shall <u>PROCEED</u>: the section 1983 excessive force claims against DePalma and Mann, the assault and battery state tort claims against DePalma and Mann, and the section 1983 deliberate indifference claims against Officer Does 2 through 10, Nurse Does 2 through 5, Lieutenant Does 1 and 2, and

**20**

Captain Doe.

(7)   The Clerk shall verify the current work addresses for Officer DePalma and Officer Mann with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this order to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.

(8)   The Clerk cannot effect service on the "John and Jane Doe" defendants without their full names and current work addresses.  Williams is directed to obtain this information during discovery and to file a notice containing this information with the Court within seventy (70) days from the date of this order.  When the Doe defendants have been identified, the Court will order that they be served with a copy of the complaint.  <u>Failure to identify the Doe defendants as directed, within seventy (70) days from the date of this order, will result in their dismissal from this case</u>.

(9)   The defendants shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(10)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.

Discovery requests need not be filed with the Court.

(11)  All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(12)  According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(13)  The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(14)  The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the Clerk.

(15)  If Williams changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case.  Williams must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Williams has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the defendants or defense counsel of his new address.

**(16)  If incarcerated, Williams shall use the Prisoner E-filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court.  Local rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R 5(f). Therefore, discovery requests must be served on the defendants' counsel by regular mail.**

**SO ORDERED.**

**Dated at Hartford, Connecticut this 28th day of November, 2022.**

_____/s/_____
**Vanessa L. Bryant**
**United States District Judge**

**23**